The first case on our docket today is the people of the state of Illinois v. Annette Wesselman, and we have Mr. Dan Evers for the appellant, and Mr. Pat McGill for the appeal. Mr. Official, may we begin? Good morning, your honors. Good morning, counsel. This is a little different kind of appeal. Annette Wesselman was convicted of DUI and had a direct appeal before this court, and this court remanded the case for a hearing on her pro se motion for a claim of ineffective assistance of counsel under Crankville and Moore, the Illinois Supreme Court decisions. This is the first appeal I've ever done of a remand after such a hearing. There isn't a great deal of law detailing what happens when there's an appeal after such a remand, but it should be fairly straightforward in terms of what the law is and how it should have been applied in the circuit court. We're asking for either this court to reverse and remand for a new trial or to reverse and remand for a new hearing with newly appointed counsel or, at a minimum, remand so that Ms. Wesselman might present her witnesses at a new hearing. The players of this case are Ms. Wesselman and her significant other, Bill Niemeyer, Deputy Cody Reeves, and Deborah Payne, who was a passenger in her car at the time. She was convicted of DUI. She testified at trial that she had not been drinking for several hours, was not intoxicated, that when she was taken to the police station that she tried to blow into a breathalyzer and was unable to do so. She had been taking Deborah Payne back to her home, and Deborah Payne actually blew into the breathalyzer and was the one who was intoxicated. Niemeyer admitted that he was intoxicated and Payne was also intoxicated. In the remand hearing and during trial, Ms. Wesselman made several complaints that her attorney was not properly investigating the case, not properly talking with her witnesses and presenting her defense. On the remand hearing, trial counsel Alan Bennett admitted that he never spoke with Deborah Payne and never made an attempt to speak with Deborah Payne besides telling Ms. Wesselman to get Deborah Payne in contact with him. Is there really any question which she would have testified to? There's an affidavit that she provides. So we know what she would have testified to if he had called? That details and follows with Ms. Wesselman's testimony at trial. Okay. And so, indeed, we do know pretty well what she's going to testify to. At that remand hearing, though… I know the affidavit wasn't available to him at that time, at least I assume it wasn't. It appears it was clear to him what she was going to testify to from talking to his client. Yes. Okay. And he said that he thought that it was kind of preposterous and that defense just didn't quite make sense. But the most important point for this court is that the trial attorney has the duty to investigate. And the duty to investigate includes the duty to interview and make decisions about witnesses. You cannot make that decision if you do not interview those witnesses. And that is a duty upon trial counsel. But, in fact, if the witness was going to testify to what Ms. Wesselman told him she was going to testify to, and now the affidavit confirms that, and he thought that was a preposterous trial story… Well, he never saw what that affidavit was. No, but that just confirmed that that was what she was going to essentially testify to. And that is a credibility determination. And that is whether you believe witnesses. And that is something that you really can't get the flavor of just from affidavit, which he never saw at the time. Now, that affidavit was provided later in Ms. Wesselman's attempt to get the circuit court to agree that trial counsel had not done his job properly. And so that was an affidavit provided for the circuit court. I understand that, but didn't it essentially confirm that that was the defense? Well, the state would argue that trial counsel never used that as a defense, and that's right. Trial counsel never used that as a defense. That was the defense that she was… That's what she testifies to, and that's what trial counsel ignores at trial. But isn't it within his purview to determine that that is a preposterous defense, and he decided it was trial… Well, not until he questions and talks with and interviews the witness. I'm sure that this court also would agree that most claims of torture by police officers in Chicago were not very good or preposterous, except that we know that there have been such things happen. The only way you can determine whether you're going to be able to do anything with that is to interview the witnesses. You're not arguing that an attorney has obligated to put on what he considers to be a preposterous defense that even conflicts with the other trial strategy he has? Well, indeed he put on those witnesses. He put on Ms. Wesselman. She has constitutional right to testify. But then he also put on Niemeyer, who basically testified to the same things. It was just a matter that he did not do the further step of getting pain and talking with her, and that is the key part. And I have to come back. It is counsel's duty to investigate. It's counsel's duty to properly question any potential witnesses to make some kind of trial strategy. To make the trial strategy and say, I didn't call her because she didn't come in and talk with me is the wrong standard. And so in terms of that, we think that it is clear that he imposed the wrong standard and your honors could reverse the conviction outright and remand for a new trial. What's our standard of review for the trial? The judge that ruled on this motion was also a trial judge? I would say that it is de novo review. I have to admit that there are really not too many cases, no cases that really talk about the standard of review in the remand here. But in terms of this, we're talking about what is the trial attorney's duty. There's no question about what the facts are in terms of how that duty is to be or what the duty was. And so in terms of that, I believe it's de novo review. Now, if you're going to make a factual question, that gets into the third part of our argument where Ms. Wesselman wanted to present the witness herself. Why did the court not allow her to present the witness under oath? Did she give a reason, the trial court? He said that just doesn't happen at these hearings, and I have to admit that you can't really point to many cases which say you should allow these witnesses to testify. But I believe that that is what the law should be and what this court should rule. Just reading the affidavit is not good enough in terms of determining the prejudice prong of ineffective assistance counsel argument because you have to determine credibility of witnesses. And in this case, we're talking very much about what the credibility of the witnesses would be. You've got the deputy on one side, and her defense is that he's basically lying and framing her. And so to give him a defense for that, you have to have as many witnesses to support your position as possible. That was devil's pay. Thank you, Mr. Everidge. You'll have the opportunity to rebut. Yes, ma'am. Thank you. Mr. Daly? Good morning, Your Honor. May it please the Court? Good morning. I want to start first with Justice Wexton's question. I think my recollection of the record is that when she wanted to put on the witnesses or said that she had witnesses available, she said, well, we're not at that stage yet. And that's really a proper reflection of the Krankel standard, which is essentially an initial inquiry between the court and the defendant or the court and trial counsel or both, which is exactly what's happening here. In fact, when you see the record, you'll see that the Court went to very thorough measures to talk to both the defendant and counsel to go through each of the defendant's allegations of ineffective assistance of counsel. Was there a review of the breathalyzer records at that time, the printouts that they talk about? Well, that came out of trial. So, I mean, that's part of the record. Part of the record. We're in a post-trial proceeding at this point. So the defendant's already been convicted. The state has already admitted the breath test results, the law book, all the foundational stuff of the breath test results. That was, you know, the state reported to be the defendant. Just to finish this last thought, I think it's probably important to point out that you'll see in the record that the defendant, for a brief period of time, was pro se. Attempted to do a hearing. It didn't go very well. I think that witnesses come within the crankle framework at the point where if the Court finds on that initial inquiry that there's some indication that there may be neglect of the case by the trial counsel, new counsel is appointed. And then these witnesses become relevant to the determination of whether or not the defendant was, in fact, denied the effective assistance of counsel. So by allowing the defendant to put these witnesses on and claim them under oath, it's probably just as likely she's going to hurt her case than anything else, given the fact that she didn't do particularly well representing herself during that course of time. So I do think that there's no mandate in crankle or Moore or any of the cases that deal with these inquiries that require or compel a court to allow witnesses, whether they're available or not. So I think that the Court was probably adhering to the law. She made a very, very explicit point at the beginning of this hearing. This is what the law is and this is what I'm going to do. And she did that in a very thorough fashion. You don't dispute that the trial attorney did not interview Payne? Yes. You agree he did not? I agree. Okay. Then how could the trial court make this statement that the testimony of Payne would be implausible? What was the trial court order? Yeah. The trial court says the failure to call Deborah Payne was a trial strategy decision due to her criminal history and irregular or inconsistent statements. And in your brief, you talked about implausible testimony. Correct. Okay. Well, what happened at the crankle hearing, of course, we have this affidavit and the affidavit is a confirmation. The trial counsel was also queried at the time at the crankle hearing. He says, I knew exactly what Ms. Payne was going to testify to. I went to the police department. I investigated the law book. I looked at the breath test records. There's absolutely nothing here that would corroborate what she would testify to. Okay. Her testimony, the defendant was aware of, the defendant's counsel was aware of, was that when they went to the police station and Payne was arrested on a warrant, that the officer had Payne take a breath test first. For some reason. She wasn't the driver. She was over 21 years of age, but she somehow was asked to take a breath test. Blue is .153, which is attributed to the defendant. Then the defendant then got on and did the breath test, but somehow got a deficient sample after three attempts at it. But this number that was Payne's number, apparently, became the defendant's number. Even though the law book shows it was the defendant who took the breath test, although the breath test result, the printout, which was admitted at trial, showed that it was the defendant's breath test and there was no deficient sample given. It was .153. So all the foundational aspects of it. And so trial counsel reasonably, looking in view of all this, found that, as he put it, and that certainly is prerogative as counsel to evaluate evidence, that this would be a preposterous defense that no jury would believe in. To that end, defense counsel focused more upon the field sobriety tests and whether the police did a thorough investigation. So I think the defense counsel had, in the court, to make an assessment that it was not a plausible defense. And then the exercise of trial strategy, he didn't see any point of putting on Payne's testimony. Now, I lost my train of thought. I think that the ‑‑ it's also important to note also that counsel was aware that there was Payne's death from prior criminal history as well. I do want to talk about two other things. Number one, the investigation or the duty to investigate. Now, as a general rule, of course, counsel has a duty to investigate. But investigation, of course, the purpose of that is to reveal something, something which is going to become, you know, germane or pertinent to the trial. Well, there's really not any question in this case that the counsel is already aware of what that information would be. So to say that he has to go to a further step in that interview, which we already know from the affidavit that Payne is just going to say what he already knew from the interview, I don't think it's a proper standard to hold the defense counsel to. Now we ‑‑ So that makes it a trial strategy. I mean, it just confirmed what she told him was going ‑‑ she thought should be her defense counsel. Correct. And by the same measure, I should note that the defense counsel had no means by which to contact Ms. Payne anyway. He didn't have a phone number or address or anything like that. He had told the defendant, find her, get her ‑‑ Wasn't it in the police report? I don't know. Judge, I firmly don't think there is an aside, because I think really the most important thing is that no one is really disputing what Payne was going to say. No one is disputing a trial counsel view that is not a viable defense. And I think that it's certainly a justifiable attitude, given what the defense counsel did do, is he did investigate prior to trial, the log books, the breath test results. He did see all this. He didn't find anything that would corroborate this. And it's really a nonsensical thing that the police officer, who at trial flatly denied him giving Payne a breath test, I would also add, that they asked the jury to believe that somehow that Payne was the source of this. If anything, it would make anything else the defense counsel is trying to argue with the jury diminished in terms of its credibility. Now ‑‑ But we're talking reasonable doubt at trial. So if one witness says, I didn't give the breath test, and the witness says, I did give a breath test, that's a decision for the trier of fact to determine who is more credible. Yes. But remember, and also in that same framework, you've got the breath test sheet, which shows the defendant did not give a sufficient sample. You've got the log book, which is recorded contemporaneously at the time. I mean, it's not just his word versus her word. It's his word and corroborating evidence for his word versus her and her, you know, convicted drunk friend. So you have to believe there's this conspiracy of sorts that would involve more than one person at least. Well, I wouldn't call it a friend quite that in such a sinister term. I think it's more like the jury is being asked that the officer gave a pointless breath test to someone and that he mistakenly attributed that test to the defendant. But like I said, that's not a believable thing standing on its own. It's certainly not believable in view of both the testimony the officer has and in view of what the log books and the breath test results show. If the log books showed that there were some attempts that didn't register, do you think then it would have been a possible offense that should have been investigated? It's difficult to – maybe. I don't know. I mean, it really is kind of dependent on what the log books show. You know, I can conjure up different scenarios of irregularities that may allow, you know, the importation of the suggestion, which is good enough if you're trying to overcome the reasonable doubt standard or trying to hold the state to the reasonable doubt standard. But we don't have that here. So, you know, I think that it's a high level of deference that is given to trial counsel to make these strategic decisions. Here, an argument of counsel refers to the testimony of Niemeyer and suggests that while Niemeyer testifies, therefore Payne's testimony would be sort of a continuation of that. I do want to point out that Niemeyer was not at the police station. He wasn't alleged to be a witness to the breath test or any of these things. He was a witness to the field sobriety test, which was part of the defense strategy, which is essentially that a defendant was not really understanding what it is that she needed to do in order to perform the breath test, and he was sort of trying to corroborate the fact that she seemed confused or seemed unable to follow what was being asked of her to do. So that's really apples and oranges as you're looking at here. So Payne's testimony was not a continuation of Niemeyer's. It's really two distinct things. I do want to make that clear because it wasn't really pointed out here. I think that that covers just about everything. So, I mean, I do want to make one point. I think that the court followed the procedure that was required to as far as Pranker was, and that based upon the evidence that is before this court, that there is no, there's far insufficient grounds upon which to find that counsel was either performing in a deficient manner or that there's a reasonable outcome, a reasonable likelihood of a trial outcome. Thank you. Thank you. Mr. Daly, Mr. Evans? One of the few cases that you'll find in this area of the law is an Illinois Supreme Court decision in NITS, Richard NITS, and it dealt with that there were some witnesses who were allowed to be questioned by the defendant at that hearing. And they don't say that this is mandatory. They just say that this happened, but that is one way these hearings can go and one way that this court should rule, should have gone in this case. Making your record, producing the witnesses, allowing them to be heard by the circuit court, would have allowed the circuit court to make the necessary factual findings for this court. The state is trying to be, saying that the trial strategy was by Bennett and determined and that having witnesses testify at this hearing would have hurt her case. Well, her case went away. She's not hurting her case because the judge ruled against her, and we're saying that the judge ruled against her because he improperly did not allow her to present the witnesses, or the main one being Payne, to demonstrate that trial counsel had not done his job. And so I find it kind of interesting that the state is saying they were trying to be very helpful to her in getting rid of her claims. The corroboration part that the state points to, that corroboration was produced and done by Deputy Cody. Her defense is that he's trying to improperly show that she was driving intoxicated and write the books against her. And so I'm not quite sure how Deputy Cody, making the law book entries, corroborates his testimonial trial in terms of what he's doing. And, again, I have to get back to the torture cases out of Chicago. Was there also a portion of their defense that had something to do with the rear blight, that he had misled the jury in something with regards to that? That was his testimonial for why he initially stopped. And didn't your client dispute that throughout the entire proceeding? Right. And isn't it possible that trial counsel thought that that was tactically the best point to go after and that these other things may have distracted from that? Well, in terms of the DUI, no, because the stop was already determined to be proper by the circuit court. And then that just gets into the line analysis about Cody stopped her improperly and was wanting to get a DUI conviction eventually against her. So in terms of the life, I don't see that as the strategy for trial. You believe it was unreasonable for trial counsel to rely on these law books in making a decision on whether to? Well, he can look at the law books. But it was unreasonable for him to rely on them. It was reasonable that Turney would have still put this on and been subject to this impeachment. It still requires him to investigate and talk with Payne about what occurred. She was one of the people there. She is one of the people who has actual knowledge. She saw what occurred. He cannot make any final decision about the trial strategy until he talks with her. And just blowing her off initially is like, let's get back to the torture cases in Chicago. Nobody wants to believe police officers torture people. But, in fact, those kind of things did occur. And when a defendant tells an attorney that he was tortured to get a confession out, there has to be some kind of investigation by trial counsel to see if he's going to be able to substantiate that at trial. And this is the same kind of thing. You are told that a police officer is doing things improperly and is not charging you correctly and is lying about what's going on. Now you have to investigate about what is going on. We urge your honors to either reverse and remand for a new hearing with counsel, reverse and remand for her to present her witnesses, or just reverse and remand for a new trial. Thank you. Thank you, Mr. Rivers. Thank you, Mr. Daley.